## HARKEY et al. v. HARKEY et al.
### No. 7874.

Court of Civil Appeals of Texas. Austin.
May 24, 1933.

Rehearing Denied June 7, 1933.

## FLORENCE et al. v. FIRST STATE BANK OF FATE.
### No. 2826.

Court of Civil Appeals of Texas. El Paso.
May 4, 1933.

Rehearing Denied May 25, 1933.

G. A. Walters, of San Saba, for plaintiffs in error.

N. C. Walker, of San Saba, for defendants in error.

. BLAIR, Justice.

The parties will be designated appellants and appellees. This suit was instituted by appellees for themselves and for the citizens living and residing in the Harkeyville community in San Saba county; and for cause of action appellees alleged that a certain small tract of land containing 3⅞ acres was deeded by I. M. Harkey, now deceased, on June 23, 1904, to W. J. Johnson, J. A. McCarley, and O. E. Dacus, and their successors, in trust for the Harkeyville community, with the following stipulations and provisions: "That I, I. M. Harkey of the County of San Saba, State of Texas, for and in consideration of the sum of One Dollar to me in hand paid by W. J. Johnson, J. A. McCarley and O. E. Dacus in trust for Harkeyville Community (said Johnson, McCarley and Dacus being the present trustees of the public school in said community) and the further consideration that the hereinafter described land shall be used for school purposes, either public or private, and for church purposes for all religious denominations, and further for public gatherings and speakings. It being expressly understood that should said Community abandon said hereinafter described land for the purposes hereinbefore set out, or should be used for any other purpose or purposes, than those already stipulated, then and in that event the said land shall immediately revert to me the said I. M. Harkey or my heirs, or those holding title to the original tract from which this land is conveyed."

The petition alleged that, immediately after the execution of this deed, and continuously thereafter until 1929, the land in question had been used for public school purposes, and had continued to be used for church purposes for all religious denominations, and for other different public gatherings and speakings until about 1929, when the school district was consolidated with another school district by a vote of the people, and the school removed to another location in the new district, the schoolhouse remaining on the premises; that shortly thereafter the appellants fenced the premises and closed the gates leading to the premises, and prohibited the use thereof for any of the purposes mentioned in the deed; that the trustees mentioned in the deed were no longer the trustees of the school; and that they had failed to carry out the trust vested in them by the deed; and that there were no successors to carry out said trust; and that appellees were residents of the community and qualified to carry out the trust purposes mentioned in the deed.

Appellees prayed for an injunction commanding appellants and their servants to desist and refrain from interfering with appellees and other citizens of the community who desired to use the premises and building for the purposes enumerated in the deed, and that they be perpetually restrained from closing up the gates and entrances leading into the premises, and that appellees be named as trustees in carrying out the purposes and trust vested in said community by the deed.

Appellants pleaded abandonment by the community of the premises for all purposes mentioned in the deed.

A trial to the court without a jury resulted in judgment granting the injunction prayed for, and appointing appellees receivers for the purpose of carrying out the trust purposes vested in the Harkeyville community by the deed; hence this appeal, which presents two questions as follows:

(1) Did the grantor intend to provide in the deed that the abandonment of the land for school purposes, one of the purposes mentioned in the deed, should constitute a reverter of title to the land; or did he intend that a reverter of title should occur only in the event that the community abandoned it for all purposes mentioned in the deed?

(2) Did the evidence adduced show as a matter of law that the community abandoned the land in question for all the purposes expressed in the deed?

With regard to the first proposition, we are of the opinion that, when the deed is construed in the light of the circumstances and conditions under which it was executed, it clearly reveals the intention of the grantor to be that the reverter clause should only become operative in the event that the land was abandoned by the community for each and all of the purposes enumerated in the deed. The evidence shows that I. M. Harkey conveyed the land in question in exchange for the land which had formerly been used by the Harkey school, reciting and enumerating the purposes for which the land was intended to be used. The schoolhouse was built by private

donations and by the labor of the citizens of the community. Immediately after its erection, the house was used for all of the purposes named in the deed, that is, for school purposes, for church purposes for all religious denominations, and for public gatherings and speakings; and continued to be so used until 1929, when the public school was consolidated with another district and the situs of the school building moved to a point in the new district. The school building remained on the premises, and shortly after the school consolidation the appellants fenced the premises and attempted to prohibit their use for any purposes mentioned in the deed. The citizens of the community attempted to use the premises, and did use the same for the purposes of conducting a farmers' night school, but, in order to do so, they were compelled to cut the fences and enter the premises over the protest of the appellants. A canning club demonstration class of the community was refused permission to use the premises after appellants had fenced them; and other public gatherings were in like manner refused permission to enter upon the premises. The premises were designated as a regular voting box for elections, and that each biennium the candidates met and spoke to the voters of the community, presenting their respective claims for votes, and the premises were so used each election year until appellants fenced it, thereby rendering the premises inaccessible for such purposes.

It is clear that the grantor recognized a different need existed in the community for each of the purposes expressed in his deed. He did not make one of them contingent upon the other. He did not give either precedence over the other, but provided that each and all of such uses should be made as the citizens of the community desired. We therefore conclude that the grantor intended that the premises should remain the property of the Harkey community so long as they were used for either of the purposes expressed in the deed. Glen Rose Collegiate Institute v. Glen Rose Ind. School Dist. No. 1, 58 Tex. Civ. App. 435, 125 S. W. 379, 382; West Texas Utilities Co. v. Lee (Tex. Civ. App.) 26 S.W. (2d) 457.

■ The evidence fully supports the finding and conclusion of the trial court that the premises had not been abandoned for any of the purposes named in the deed. It shows that the community was seeking and insisting upon using it for night school for the farmers and for canning demonstration for the farmer women of the community, thus carrying out the school purpose clause. The evidence further shows that, because the appellants fenced the premises, public speakings were abandoned and had to be held elsewhere, although the community desired to meet and hold them upon the premises in question. The evidence further shows that other public gatherings of the community were denied because appellants fenced the premises; and we are of the view that the evidence is undisputed that the community still seeks to use the building and the premises for each and every purpose mentioned in the deed.

The judgment of the trial court will be affirmed.

Affirmed.